UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA            :

               - v. -               :      S1 09 Cr. 259 (DLC)

CARLOS MEJIA and                    :
JOEL RODRIGUEZ,
                                    :
               Defendants.
                                    :
- - - - - - - - - - - - - - - x


**SUBMISSION BY THE UNITED STATES OF AMERICA RESPONDING TO JOEL RODRIGUEZ'S JUNE 18, 2010 LETTER, AND ADDRESSING RODRIGUEZ'S ELIGIBILITY FOR "SAFETY VALVE" RELIEF**


                              PREET BHARARA
                              United States Attorney for the
                              Southern District of New York,
                              Attorney for the United States
                                   of America


AMIE N. ELY
HOWARD S. MASTER
Assistant United States Attorneys
     - Of Counsel -



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*

*One Saint Andrew's Plaza*
*New York, New York 10007*

June 22, 2010

**By Hand**

The Honorable Denise L. Cote
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:  **United States v. Joel Rodriguez,**
S1 09 Cr. 257 (DLC)

Dear Judge Cote:

This letter is submitted in response to the letter of defendant Joel Rodriguez ("Rodriguez" or "the defendant"), dated June 18, 2010, (the "June 18 Ltr.") which contends that the two-level enhancement for obstruction of justice, pursuant to Section 3C1.1 of the United States Sentencing Guidelines (the "Obstruction Enhancement"), is not warranted.  For the reasons set forth in our original sentencing memorandum, and below, the Obstruction Enhancement is appropriate.

Additionally, the Government wishes to advise the Court that it appears that Rodriguez qualifies for relief pursuant to Sections 2D1.1(b)(11) and 5C1.2 of the United States Sentencing Guidelines, and Title 18, United States Code, Section 3553(f) (the "Safety Valve Relief").  Accordingly, the Government's position is that Rodriguez's advisory Guidelines range, applying both the Obstruction Enhancement and Safety Valve Relief, is 151 to 188 months' imprisonment.  A sentence within that Guidelines range would be sufficient, but not greater than necessary, to serve the legitimate goals of sentencing.

**Rodriguez Should Receive The Obstruction Enhancement**

**A.     Background**

As the June 18 Letter makes clear, Rodriguez does not dispute that he requested that Rafael Gonzales "lie about ownership of the gold Pontiac and about his employment. . ."

Hon. Denise L. Cote
June 22, 2010
Page 3 of 5

(June 18 Ltr. at 2).[1]  The defendant admits his request to Gonzales to lie about the ownership of the Gold Pontiac was intended to ensure that the Gold Pontiac was not seized.  (Id.).  He does not appear to address in the June 18 Letter why he lied about his employment.  However, in the proffer during which he attempted to qualify for Safety Valve Relief (the "Safety Valve Proffer"), Rodriguez admitted that he asked Gonzales to claim that Rodriguez worked for him to make it appear that Rodriguez had a legitimate source of income.

> **B.      Analysis**

Rodriguez contends that his requests that Gonzales lie to the DEA about the Gold Pontiac and give perjured testimony to the jury regarding that vehicle's ownership and Rodriguez's employment do "not demonstrate obstructive intent with regard to any aspect of this prosecution." (June 18 Ltr. at 2).  Defense counsel is correct that an intent to obstruct is required for the Obstruction Enhancement to apply.  United States v. Kelly, 147 F.3d 172, 178 (2d Cir. 1998); see also United States v. Khimchiachvili, 372 F.3d 75, 80 (2d Cir. 2004) (explaining that the Obstruction Enhancement must be based on "conduct that willfully interferes with or attempts to interfere with the disposition of the criminal charges against a defendant"), vacated on other grounds sub nom. by Berwick v. United States, 544 U.S. 917 (2005).  However, the defendant's attempts to "unlawfully influenc[e] . . . a witness," evince his intent to obstruct justice, and support imposing the Obstruction Enhancement.  U.S.S.G.  §3C1.1, Applic. N. 4(a); United States v. Peterson, 385 F.3d 127, 139-40 (2d Cir. 2004) (applying the obstruction of justice enhancement where the defendant sent letters to co-defendants from jail urging them to maintain untrue versions of events and generally not to cooperate with the government); United States v. White, 240 F.3d 127, 138 (2d Cir. 2001) (explaining that the obstruction of justice enhancement within the meaning of Note 4(a) includes telling a co-arrestee to lie to police).

First, the Obstruction Enhancement should apply because Rodriguez attempted to unlawfully influence Gonzales to lie during the trial.  The Obstruction Enhancement applies if a defendant "threaten[s], intimidat[es], or otherwise unlawfully influenc[es] a co-defendant, witness, or juror, directly or indirectly, or attempt[s] to do so."  U.S.S.G.  §3C1.1, Applic. N.

---

[1]As Your Honor will recall, Rodriguez asked Gonzales to lie at least twice: first, when the Drug Enforcement Administration ("DEA") seized the gold Pontiac that Rodriguez was driving when Rodriguez was arrested (the "Gold Pontiac") (Tr. at 636-37), and, second, when Gonzales was served with a subpoena.  (Tr. 638-40).  First, Rodriguez directed Gonzales to claim the Gold Pontiac from the DEA by "say[ing] that the car was mine."  (Tr. 637).  Gonzales refused.  (Id.).  Second, after "[a] lot of people" saw law enforcement officers serve a subpoena at Gonzales's place of business, Rodriguez paid a visit to Gonzales.  (Tr. 639).  Rodriguez told Gonzales that Gonzales would "see Joel Rodriguez's face" at the upcoming trial, and that Rodriguez's family would be at the trial.  (Tr. 639).  Rodriguez told Gonzales to say that the Gold Pontiac belonged to Gonzales, and that Rodriguez worked for Gonzales.  (Tr. 640).

Hon. Denise L. Cote
June 22, 2010
Page 4 of 5

4(a).  This enhancement "covers not only threats or intimidation but also 'otherwise unlawfully influencing' a witness." United States v. House, 551 F.3d 694, 699 (7th Cir. 2008) (quoting United States v. Johnson, 46 F.3d 636, 638 (7th Cir. 1995)).  "Unlawfully influencing" a witness, the Seventh Circuit held, "means intentionally engaging in conduct 'having a natural tendency to suppress or interfere with the discovery of truth.'"  Id. (citation omitted); see also United States v. Feliz, 286 F.3d 118, 120 -121 (2d Cir. 2002) (defendant requested friends to provide false alibi (citing, inter alia, United States v. Lanzotti, 205 F.3d 951, 957 (7th Cir. 2000) (holding that "counseling a potential witness to make false statements to investigating authorities" clearly qualifies for the Obstruction Enhancement)).

The requested lies about employment and the ownership of the Gold Pontiac did have the potential to impede the juries' assessment of the facts and interfere with the "discovery of truth." House, 551 F.3d at 699.  Accord Kelly, 147 F.3d at 179 (district court noted that the defendant's perjury was intended to "confuse the jury").  As the jury learned, the Gold Pontiac contained narcotics residue.  Had Gonzales agreed to perjure himself regarding the ownership of the Gold Pontiac, the jury could have attributed the narcotics residue to Gonzales, rather than to Rodriguez, the true owner of the Gold Pontiac.

The reason Rodriguez requested that Gonzales lie about employing him was, as Rodriguez admitted during the Safety Valve Proffer, intended to provide an explanation for Rodriguez's ability to support himself, despite the fact that he was not employed.  Again, had Gonzales told the jury that Rodriguez worked for him, Rodriguez's unexplained wealth would have, quite simply, been explained.  The Government's argument that Rodriguez was engaging in narcotics dealing to support himself would have carried less weight if Gonzales falsely claimed that Rodriguez worked for him.

Second, the Obstruction Enhancement should apply because, as he admits, Rodriguez requested that Gonzales lie about the ownership of the Gold Pontiac to prevent its forfeiture.  Forfeiture of the Gold Pontiac was related to the "offense of conviction."  U.S.S.G. §3C1.1.  In United States v. Nesbitt, 90 F.3d 164 (6th Cir. 1996), for example, the Sixth Circuit affirmed an Obstruction Enhancement based on "the defendant's alleged perjury (and his instructions to his aunt to commit perjury) at a civil forfeiture proceeding regarding" a vehicle at issue in a related charge, for which the defendant was not convicted.  United States v. Burke, 345 F.3d 416, 429 (6th Cir. 2003) (analyzing Nesbitt).  Moreover, the Application Notes to the Obstruction Enhancement suggest that the Sentencing Commission contemplated that obstruction regarding forfeiture could, in certain circumstances, support the Obstruction Enhancement.  U.S.S.G. §3C1.1, Applic. N. 4(j) (Obstruction Enhancement applies for "failing to comply with a restraining order or injunction issued pursuant to 21 U.S.C. 853(e) or with an order to repatriate property issued pursuant to 21 U.S.C. 853(p)").  Accordingly, even accepting at face value Rodriguez's proffered reason for asking Gonzales to falsely claim Gonzales owned the Gold Pontiac, the potential forfeiture of the Gold Pontiac by the DEA or by this Office was related to

Hon. Denise L. Cote
June 22, 2010
Page 5 of 5

the "offense of conviction." U.S.S.G. §3C1.1. As a result, Rodriguez's request that Gonzales lie about matters related to the forfeiture of the Gold Pontiac support the Obstruction Enhancement.

### Rodriguez Appears to Qualify For Safety Valve Relief

Rodriguez met with the Government on or about June 17, 2010, and, as a result of that meeting, it is the Government's position that Rodriguez qualifies for Safety Valve Relief. Accordingly, Rodriguez is no longer subject to the ten-year mandatory minimum sentence that was previously required due to his convictions for conspiring to possess with the intent to distribute more than five kilograms of cocaine, and attempting to possess with the intent to distribute more five kilograms of cocaine. The Government's current position is that Rodriguez's total offense level is 34: pursuant to U.S.S.G. § 2D1.1(a)(3) and (c)(3), Rodriguez's base offense level is 34, because he attempted and conspired to possess with the intent to distribute 28 kilograms of cocaine. (Rodriguez PSR ¶ 37). As explained above, an additional two levels should be added to his offense level, pursuant to U.S.S.G. § 3C1.1, for obstruction of justice. (Rodriguez PSR ¶ 33). Because he qualifies for Safety Valve Relief, his offense level is reduced by two, pursuant to U.S.S.G. §§ 2D1.1(b)(11) and 5C1.2. Accordingly, the Government's position is that Rodriguez's offense level is 34. At an offense level of 34 and Criminal History Category I, his Guidelines range is now 151 to 188 months' imprisonment.

### Conclusion

For the reasons set forth above, and in our prior sentencing memorandum, the Government respectfully requests that Your Honor 1) impose the Obstruction Enhancement; 2) find that Rodriguez is eligible for Safety Valve Relief; and 3) sentence Rodriguez within the applicable Guidelines range of 151 to 188 months' imprisonment, as such a sentence would be sufficient, but not greater than necessary, to serve the legitimate goals of sentencing.

Respectfully submitted,

PREET BHARARA
United States Attorney
Southern District of New York

By:     _____
        Amie N. Ely/ Howard S. Master
        Assistant United States Attorneys
        212-637-2214/2248

CC:     Barry Goldberg, Esq., (Via email to cgbgplus3@aol.com)